**Wilbur K. HART, Jr., William P. Hart, Douglas C. Hart And Robert M. Trapp, Plaintiffs–Appellants,**

v.

**William MYERS, Thomas Welch and Rick Lewis, Defendants–Appellees.**

**Docket No. 02–7207.**

United States Court of Appeals, Second Circuit.

Nov. 1, 2002.

John R. Williams, Esq., for Plaintiffs–Appellants.

David H. Wrinn, Assistant Attorney General, State of Connecticut, for Defendants–Appellees.

Present NEWMAN, POOLER, Circuit Judges, and JONES, District Judge.[1]

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Plaintiffs–Appellants appeal from the January 28, 2002 judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*) granting qualified immunity to Defendants–Appellees, conservation officers employed by the Department of Environmental Protection of the State of Connecticut, after they cited Plaintiffs–Appellants for allegedly violating Connecticut's hunting laws. On December 28, 1996, Defendants–Appellees ("the conservation officers") were investigating reports of illegal hunting in the vicinity of a fifty-acre parcel of unmarked property owned by Florence Hart ("the Hart property"). That same date, Plaintiffs–Appellants, three relatives of Mrs. Hart and a family friend, were camping and hunting on the Hart property.

Late in the afternoon, the conservation officers received reports of rifle fire in the direction of a state park bordering the Hart property, in which hunting is prohibited. One of the officers, William Myers, discovered the entrails of a freshly-killed deer on the Hart property and followed the drag line of the carcass to a campsite in a wooded part of the property, arriving after sunset. Myers observed a small structure, a campfire, and a "hang pole," from which two untagged deer carcasses hung. After entering the campsite, Myers inspected the deer on the hang pole and questioned William Hart, the sole occupant, until Wilbur Hart, Robert Trapp, and Wilbur Hart's stepson, Lelio Shimuzu, arrived with another deer carcass. Myers observed that the hunters were not wearing the required fluorescent orange clothing. Myers also learned that they had been hunting after hours and that Trapp did not have a hunting permit. At some point, Officer Welch and Sergeant Lewis arrived at the campsite, and the conservation officers finished questioning the hunters, who cooperated with the investigation.[2] After locating Douglas Hart, who was still hunting, the conservation officers issued misdemeanor citations to the Harts and Trapp and seized their rifles and deer carcasses.[3]

Plaintiffs–Appellants were prosecuted for violating various provisions of Connecticut's hunting laws. However, the charges were dismissed after the state court held that the warrantless search and seizures were unlawful, as they occurred within the curtilage of the structure, which had previously been used as a cabin. Plaintiffs–Appellants subsequently filed the instant civil rights action, and the district court granted summary judgment to the conservation officers. Although the district court concluded that there was a triable issue whether the search and seizures occurred within the curtilage of a dwelling, the court held that the officers were entitled to qual-

---

1. The Honorable Barbara S. Jones, United States District Judge for the Southern District of New York, sitting by designation.

2. Although Trapp initially identified himself as "Jeffrey Hart," the officers did not charge him with criminal impersonation.

3. Lelio Shimuzu, who is not a party to this action, was not cited because he was a minor.

ified immunity, as their actions were not objectively unreasonable in light of established law.

On appeal, Plaintiffs–Appellants argue that the conservation officers are not entitled to qualified immunity because their warrantless search and seizures clearly violated the Fourth Amendment. The Supreme Court has stated the test for qualified immunity in situations such as the instant case as follows: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts use a two prong-test to determine whether a law enforcement officer is entitled to qualified immunity. First, the court considers whether the facts, taken in the light most favorable to the plaintiff, establish that the defendant officer's conduct violated the plaintiff's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Assuming that a plaintiff's constitutional right was violated, the court must then consider whether the right was "clearly established." *Id.* at 201–02, 121 S.Ct. 2151. The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. In other words, the court must consider whether a reasonable officer could have believed that his conduct was lawful. *Id.See also X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 66 (2d Cir.1999) (holding that officers are entitled to qualified immunity if their actions were objectively reasonable in light of clearly established law).

Regardless of whether the conservation officers' conduct violated Plaintiffs Appellants' constitutional rights, *see Horne v. Coughlin,* 191 F.3d 244, 245–50 (2d Cir. 1999) (explaining appropriateness of deciding only the qualified immunity issue in some circumstances), we conclude that the officers reasonably could have believed it lawful to enter the campsite, seize the weapons and deer carcasses, and issue the citations. It would not have been obvious to a reasonable observer that the structure had been used as a dwelling, as it was a small, rustic structure in the middle of an undeveloped forest. Given its appearance and location, one reasonably could have mistaken it for a storage shack, especially in the dark. Officer Myers initially observed William Hart tending a campfire, suggesting that the hunters were camping outside the structure rather than living inside of it. Moreover, Plaintiffs Appellants did not ask the officers to leave the premises or inform them that the structure was a dwelling. Accordingly, the conservation officers were reasonable in believing that the campsite was not within the curtilage of a dwelling.

The search of the hang pole was also reasonable under the circumstances. Even had the structure been apparent as a dwelling, the hang pole was located in a wooded area at the edge of the clearing, approximately 25 yards from the structure. The hang pole was surrounded by other trees, and there was nothing to suggest that it was being used in conjunction with any "intimate activity" associated with home life. *See Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (defining curtilage as the "land immediately surrounding and associated with the home . . . to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'") (quoting *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)). The hang pole was not part of a campsite encircled by a fence or property markers. Although the structure was located within a natural clearing, the hang

48

pole itself was part of a wooded area bordering the campsite. Thus, an officer approaching the campsite could reach the hang pole without realizing that he had left the surrounding forest. Moreover, Officer Myers discovered the campsite after sunset and did not have a working flashlight, necessarily impairing his ability to observe the area.

Based upon the foregoing, we conclude, based on undisputed facts viewed from the perspective of Plaintiffs–Appellants, that the conservation officers are entitled to qualified immunity, as they reasonably could have believed that the campsite and hang pole were not within the curtilage of a dwelling.